# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Harry D. Leinenweber | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 1897 | **DATE** | 4/27/2004 |
| **CASE TITLE** | USA ex. rel. Lawrence White vs. Kenneth Briley, Warden | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: The Petition for Writ of Habeas Corpus is DENIED.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | | | Document Number |
|---|---|---|---|---|---|---|
| | No notices required. | | | number of notices | | |
| | Notices mailed by judge's staff. | | | | | |
| | Notified counsel by telephone. | | | 4·28-04 | | |
| ✓ | Docketing to mail notices. | | | date docketed | | |
| ✓ | Mail AO 450 form. | | | G~y | | 17 |
| | Copy to judge/magistrate judge. | | | docketing deputy initials | | |
| WAP | courtroom deputy's initials | | U.S. DISTRICT COURT | date mailed notice | | |
| | | | Date/time received in central Clerk's Office | mailing deputy initials | | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

F I L E D

APR 2 7 2004

JUDGE HARRY D. LEINENWEBER
U.S. DISTRICT COURT JUDGE

UNITED STATES OF AMERICA, ex
rel LAWRENCE WHITE,

          Plaintiff,

   v.

KENNETH BRILEY, Warden,

          Defendant.

Case NO. 03 C 1897

Hon. Harry D. Leinenweber

ENTERED

APR 2 8 2004

## MEMORANDUM OPINION AND ORDER

Lawrence White (hereinafter, "White") is incarcerated at Stateville Correctional Center, serving a ninety-five-year sentence for first degree murder, attempted murder, armed robbery, and residential burglary. After an unsuccessful direct appeal, White filed this Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, asserting that the state trial court violated his Fifth, Sixth, and Fourteenth Amendment rights to Due Process, Notice, and Trial by Jury upon proof beyond a reasonable doubt by basing his sentence on factual findings made by the trial court, but never alleged in the indictment, submitted to a jury, or proven beyond a reasonable doubt. For the following reasons, the petition is denied.

## I. BACKGROUND

White was indicted for murder in the stabbing death of Charles Cole. In the Circuit Court of Cook County on December 4, 1996,



petitioner White entered an open plea of guilty to first degree murder, residential burglary, armed robbery, home invasion, armed violence, aggravated battery, aggravated unlawful restraint, and unlawful restraint. To establish a factual basis for the plea, the parties stipulated that a witness, Valerie Drain, would testify that on November 26, 1994, she was present in an apartment with Charles Cole when the petitioner and two other men forcefully entered. The three men proceeded to tie up Drain and Cole, then ransacked the apartment taking money, jewelry, and a color television set that was removed from the apartment. A short time later, White returned to the apartment and plunged a knife into Drain's back with sufficient force to cause the knife handle to break. White then grabbed Cole by the hair, lifted his head from the floor and fatally slit his throat with a knife. Dr. An, a pathologist, testified that he performed an autopsy on the deceased, Cole, and found numerous stab wounds about the neck area. The deceased died as a result of multiple stab wounds to the neck that lacerated Cole's jugular vein and carotid artery.

The trial court entered the guilty plea, then held a death penalty hearing. During the hearing, Detective John R. Duckhorn testified that he found the deceased face down in a large pool of blood "hog tied" with telephone wires with his legs and arms behind him. There were huge gash wounds and gaping holes in his neck. The court admitted victim impact statements and evidence of

petitioner's prior convictions for possession of a stolen motor vehicle and theft. Dr. Michael E. Stone, a licensed clinical psychologist, testified that based on his investigations he concluded that the petitioner was suffering from chronic post-traumatic stress disorder, dependent disorder, lifestyle depression, very severe cocaine dependence, alcohol dependence, and an avoidant personality disorder. In his opinion, petitioner was suffering from these conditions at the time of the crime, and he would benefit from a structured environment and psychotropic medications. Dr. Stone said he believed that petitioner would be "productive" if confined for a very long period of time, and that petitioner understood the seriousness of what had happened, was remorseful, and was taking steps to improve his situation.

The court found petitioner eligible for the death penalty, but found that the murder was committed while defendant was under the influence of extreme mental or emotional disturbance, and that there was sufficient mitigation to preclude the death sentence or life in prison. In considering the sentence to be imposed, the court regarded petitioner's cocaine addiction a mitigating factor, but determined that an extended term sentence was warranted because of the heinous and brutal conduct of defendant.

The circuit court sentenced petitioner to an extended 80-year prison term for the murder of Charles Cole. The court also sentenced petitioner to a 15-year prison term for the attempted

murder of Valerie Drain, for armed robbery and residential burglary; these sentences were to be served concurrently to each other, but consecutively to petitioner's 80-year sentence for first degree murder, for an aggregate term of 95 years. The court determined that the remaining counts merged with the other convictions.

This case has a somewhat complicated appellate history. An initial appeal resulted in the Illinois Court of Appeals remanding the case to the trial court due to improper admonishment at the sentencing hearing. (The trial judge described the crime as one of the most brutal and heinous he had heard, and denied petitioner's *pro se* motion to reconsider the sentences.) In a second appeal, petitioner claimed that the trial court abused its discretion in not reducing his sentence by failing to consider adequately mitigating factors. The petitioner's arguments were found unpersuasive and the judgment of the circuit court was affirmed by the Illinois Court of Appeals on June 23, 2000.

Just three days later, the U.S. Supreme Court decided *Apprendi v. New Jersey*, 530 U.S. 466 (2000), which held that any fact that increases the penalty for a crime beyond the prescribed statutory maximum, other than the fact of a prior conviction, must be submitted to a jury and proven beyond a reasonable doubt. The Court stated that "[w]hen a judge's finding based on a mere preponderance of the evidence authorizes an increase in the maximum

punishment, it is appropriately characterized as 'a tail which wags the dog of the substantive offense.'" *Id.* at 495, quoting *McMillan v. Pennsylvania*, 477 U.S. 79, 88 (1986).

At the time of petitioner's trial, one convicted of first degree murder in Illinois was subject to a term of imprisonment of not less than 20 and not more than 60 years. 730 ILCS 5/5-8-1(a)(1)(a)(West 1996). However, an extended term of not less than 60 and not more than 100 years could be imposed if the court found by a preponderance of the evidence that the offense was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty. 730 ILCS 5/5-8-2(a)(1)(West 1996); 730 ILCS 5/5-5-3.2(b)(2)(West 1996); *see People v. Swift*, 781 N.E.2d 292, 296-98 (Ill. 2002).

Similarly, if the trial court found that a defendant acted during a "single course of conduct during which there was no substantial change in the nature of the criminal objective," and that the defendant inflicted "severe bodily injury" during the commission of a Class X or Class 1 felony, the sentences must run consecutively. 730 ILCS 5/5-8-4(a)(West 1996).

In light of *Apprendi*, White filed a petition for rehearing on July 14, 2000, arguing that the statutory provisions under which he was sentenced to an extended term and consecutive sentences were constitutionally invalid. White claimed that his sentence should be struck down or reduced because the statutes under which he was

sentenced did not require that he be given notice of the facts that subjected him to the increased penalties he received, nor did they require a determination that those facts existed upon proof beyond a reasonable doubt. The petitioner did not specifically contest the finding of brutal and heinous behavior at trial.

The Illinois First District Appellate Court subsequently vacated the trial court's extended 80-year term for petitioner's murder conviction, as well as the consecutive sentences, and ordered the petitioner's sentence reduced to a 60-year term, the maximum allowable penalty for first degree murder in Illinois absent additional findings of fact. Upon appeal, the Illinois State Supreme Court issued a Supervisory Order directing the appellate court to reconsider its previous opinion in light of that Court's decision in *People v. Jackson*, 769 N.E.2d 21 (Ill. 2002).

In *Jackson*, the Illinois Supreme Court confronted a case where the defendant had been sentenced under the same statutes as petitioner White, *i.e.*, 730 ILCS 5/5-5-3.2(b)(2), 5-8-2(a)(West 1996). *Id.* at 25. After a plea of guilty was entered, the trial court found the defendant's crimes to be exceptionally brutal behavior indicative of wanton cruelty, a finding on which the burden of proof was merely a preponderance of the evidence. *Id.* On appeal, the Illinois Supreme Court acknowledged that according to *Apprendi*, "[e]very fact necessary to establish the range within which a defendant may be sentenced is an element of the crime and

thus falls within the constitutional rights of a jury trial and proof beyond a reasonable doubt, made applicable to the states by the due process clause of the fourteenth amendment." *Id.* at 27. But by pleading guilty, the *Jackson* Court explained, a defendant is explicitly giving up the right to a jury trial and proof beyond a reasonable doubt. *Id.* ("A knowing relinquishment of the right to a trial by jury is the *sine qua non* of a guilty plea.") Thus, the Court determined that a criminal defendant's guilty plea waives *Apprendi*-based sentencing objections on appeal. *Id.* at 26.

On reconsideration of petitioner White's case in light of *Jackson*, the First District Appellate Court subsequently held that petitioner's guilty plea waived any challenge to the constitutionality of his extended-term and consecutive sentences. Petitioner White filed a petition for leave to appeal to the Supreme Court of Illinois that was denied on December 5, 2002. On March 14, 2003, White timely filed the instant petition for writ of habeas corpus.

In his *pro se* petition, White claims that his extended-term 80-year sentence, and his consecutive sentences, each violate his right to notice, a jury trial and the due process of law because the enhanced sentence is based on facts not alleged in the indictment, submitted to a jury, or proven beyond a reasonable doubt. Petitioner further claims that the Illinois Supreme Court's *Jackson* decision that a guilty plea precludes constitutional

challenges under *Apprendi* is contrary to federal law as established by the U.S. Supreme Court.

## II. **DISCUSSION**

Section 2254 of the Anti-Terrorism and Effective Death Penalty Act of 1996 (the "AEDPA") entitles a prisoner to a writ of habeas corpus if he is being held in prison pursuant to a state court judgment obtained in violation of rights guaranteed by the United States Constitution. 28 U.S.C. § 2254; *see Williams v. Taylor*, 529 U.S. 362, 375 (2000). A federal court may not grant a writ of habeas corpus for any claim that was adjudicated on the merits in state court proceedings, unless the state court decision: (1) was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(1) and (2); *see Ellsworth v. Levenhagen*, 248 F.3d 634, 638 (7th Cir. 2001). Additionally, a federal court may not address the merits of a claim contained in a habeas corpus petition unless the petitioner can show that he has exhausted his state remedies and avoided procedural default. 28 U.S.C. § 2254(b)(1)(A); *see Bell v. Pierson*, 267 F.3d 544, 551 (7th Cir. 2001). A petitioner exhausts his state remedies and avoids procedural default by presenting his claims fully and fairly to the state courts. *See O'Sullivan v.*

*Boerckel,* 526 U.S. 838, 842, 144 L. Ed. 2d 1, 119 S. Ct. 1728 (1999).

In this case, White presented his claim to the Illinois appellate court that the trial court violated his Fifth, Sixth, and Fourteenth Amendment rights to notice, jury trial, and the due process of law, as delineated in Apprendi. The appellate court first vacated petitioner's sentences as a violation of federal law under *Apprendi*, then later vacated its judgment and reinstated the trial court's sentence in response to a Supervisory Order by the Illinois Supreme Court instructing the appellate court to reconsider its decision in light of its decision in *Jackson*. Petitioner then appealed the appellate court's decision to the Illinois Supreme Court, which refused to grant petitioner leave to appeal. White has no other means by which to litigate this constitutional claim. Because his claim is not of a jurisdictional nature, state habeas corpus relief is unavailable to him. 735 ILL. COMP. STAT. 5/10-101 et seq. (West 2003). He may not file a petition for post-conviction relief because he is prohibited by principles of *res judicata* from raising constitutional issues that were litigated and rejected on direct appeal in a post-conviction petition. 725 ILL. COMP. STAT. 5/122-1 et seq. (West 2002); *see also, People v. Haynes,* 737 N.E.2d 169, 184 (Ill. 2000). White has exhausted his state remedies and the Court may accordingly address the merits of his claim.

- 9 -

## A. *Apprendi* Analysis

White brings his claim under § 2254(d)(1) and contends that the appellate court's decision, finding his constitutional *Apprendi* claims precluded by his guilty plea, was contrary to, or involved an unreasonable application of, federal law. Because the appellate court acted in accordance with a supervisory order directing it to reconsider its prior decision in light of the Illinois Supreme Court's *Jackson* decision, petitioner likewise claims that *Jackson* is contrary to federal law.

A petitioner may only obtain habeas corpus relief under § 2254(d)(1) if he demonstrates that the decision handed down by the last state court to consider the claim, in this case the Illinois appellate court, is "contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States." § 2254(d)(1). The question of an effective waiver of a federal constitutional right in a proceeding is indeed governed by federal standards. *Boykin v. Alabama*, 395 U.S. 238, 243 (1969)(*citing Douglas v. Alabama*, 380 U.S. 415, 422 (1965). Thus, the law applicable in this case is the standard for determining which constitutional rights a defendant has waived by pleading guilty to the crimes alleged in an indictment as set out in *Boykin*, *Johnson v. Zerbst*, 314 U.S. 458 (1938), and their progeny.

Upon entering a plea of guilty in a state criminal trial, a defendant waives the federal constitutional right to trial by jury, the right to confront one's accusers, and the privilege against compulsory self-incrimination. *See, e.g.*, *Boykin*, 395 U.S. at 243. To be valid, the guilty plea must be affirmatively shown to be voluntary and intelligent. *Boykin*, 395 U.S. at 242. The requirement that pleas be knowing and voluntary is especially important because a plea of guilty is not only an admission of various acts, but is itself a conviction, leaving only the passing of judgment and the determination of punishment. *Boykin*, 395 U.S. at 242. In addressing the degree of comprehension required of the defendant making a guilty plea, the Supreme Court has stated that "[b]ecause a guilty plea is an admission of all the elements of a formal criminal charge, it cannot be truly voluntary and knowing unless the defendant possesses an understanding of the law in relation to the facts." *McCarthy*, 394 U.S. at 466 (interpreting FED. R. CRIM. P. 11 regarding guilty pleas in federal court). With regard to state criminal proceedings, the Supreme Court instructs that a guilty plea is not valid unless a defendant "enters his plea knowing what the elements of the crime charged are." *Henderson v. Morgan*, 426 U.S. 637, 651 (1976)(White, J., concurring).

It stands to reason that waivers resulting from guilty pleas must likewise be voluntary and knowing. And indeed, the Supreme Court has stated that a waiver is "an *intentional* relinquishment or

abandonment of a *known* right or privilege." *Johnson*, 314 U.S. at 464 (emphasis added). A waiver is considered knowing and intelligent, and the defendant is considered sufficiently aware, if the defendant "fully understands the nature of the right and how it would likely apply in general in the circumstances -- even though the defendant may not know the specific detailed consequences of invoking it." *United States v. Ruiz*, 536 U.S. 622, 629 (2002).

At issue in this case is the waiver of the right to have proven beyond a reasonable doubt all the elements of the charged crime. This right is encompassed in the right to trial by jury. *United States v. Gaudin*, 515 U.S. 506, 510 (1995)(stating that the Fifth and Sixth Amendments together "require criminal convictions to rest upon a jury determination that the defendant is guilty of every element of the crime with which he is charged, beyond a reasonable doubt"). White alleges that his constitutional rights to notice and to have the facts against him proven beyond a reasonable doubt were violated. According to White, because the "exceptionally brutal or heinous" finding by the trial court led to an increased maximum sentence, it should have been treated as an element of the offense and either charged prior to his guilty plea or proven beyond a reasonable doubt in accordance with *Apprendi*. This characterization of *Apprendi* does not appear to run afoul of the Illinois Supreme Court's decision in *Jackson*, as the Court stated "[e]very fact necessary to establish the range within which

a defendant may be sentenced is an element of the crime and thus falls within the constitutional rights of a jury trial and proof beyond a reasonable doubt." *Jackson*, 769 N.E.2d at 27.

White points out, however, that the indictment never charged the "exceptionally brutal or heinous" element, nor did he ever admit or stipulate to committing an exceptionally brutal or heinous crime indicative of wanton cruelty. White thus argues that his guilty plea was made without the requisite knowledge of the elements of the crime charged, and should not be considered a valid waiver of his right to have the "exceptionally brutal or heinous" determination proved beyond a reasonable doubt. White's argument appears to be that the State has the option to either charge him with all the elements that determine his maximum punishment and then accept a guilty plea, or to prove those elements beyond a reasonable doubt. Anything less, argues White, would be a violation of a defendant's constitutional right to have a jury determination beyond a reasonable doubt of the elements constituting the crime charged, resulting in an invalid guilty plea and waiver with respect to those elements.

The respondent, echoing the arguments of the Illinois Supreme Court in *Jackson*, points out that Illinois Supreme Court Rule 402(a)(1) only requires that a defendant be apprised of, and understand, the nature of the charges against him prior to accepting a guilty plea to that charge. *See Jackson*, 769 N.E.2d

at 27. Thus, under Illinois law the state is not required to delineate specifically every element of the crime charged prior to accepting a guilty plea, provided that the defendant is made to understand the charges against him. Once this is done and a guilty plea is entered, according to the Court in *Jackson*, the state is thereafter "absolved of its burden of proving any elements of the crime," whether beyond a reasonable doubt or otherwise, since this is one of the fundamental rights being waived by a defendant who pleads guilty. *Jackson*, 769 N.E.2d at 29.

The legal question in this case is whether, in satisfying the notice requirement under Illinois law to apprise the defendant of the true nature or substance of the charges against him, the State also satisfies the requirement of a knowing and voluntary waiver. So long as sufficient notice is given, the respondent claims that the State has no further obligation to inform a defendant of any specific elements, whether those elements raise the statutory maximum penalty or not. While the Supreme Court has stopped short of stating that the notice requirement entails a description of every element of the offense charged, *Henderson*, 426 U.S. at 647, n.18, the Court has made clear the critical importance of those elements that dictate the defendant's maximum possible sentence. *Id.* at 651 (White, J., concurring)(". . . the defendant's guilt is not deemed established by entry of a guilty plea, unless he either admits that he committed the crime charged, or enters his plea

knowing what the elements of the crime charged are."). The Supreme Court's decision in *Apprendi* further highlighted the importance of those elements specifically capable of raising a defendant's maximum statutory punishment.

In light of *Henderson* and *Apprendi*, to find waiver in the absence of affirmatively showing that the defendant was aware of those elements charged that raise the statutory maximum penalty would seemingly eviscerate the requirement that a guilty plea be voluntary and knowing as dictated by *Boykin* and *Henderson*. Moreover, if the waiver is to be an intentional abandonment of a known right as required by *Johnson*, the defendant must understand the nature of the right and how it would likely apply in general. *Ruiz*, 536 U.S. at 629. *Apprendi* identified the right to require the State to prove beyond a reasonable doubt all facts necessary to establish the range of penalties potentially applicable to the defendant. Neither the respondent in this case nor *Jackson* explains how the defendants in either case could possibly have understood the nature of this right when it had not even been identified by the Supreme Court until after the defendants' plea and sentencing hearings.

As pointed out by the respondent, *Jackson* attempted to distinguish *Apprendi* by seizing on the terms of the plea agreement in *Apprendi*. *Jackson*, 769 N.E.2d at 28. In *Apprendi*, the defendant pleaded guilty, but reserved the right to challenge the

hate crime statute that produced the extended sentence. *Apprendi*,
530 U.S. at 470. This reservation, according to the *Jackson* court,
disclaimed any waiver made via the defendant's guilty plea
regarding the factors that led to the extended sentence. *Jackson*,
769 N.E.2d at 28. The Illinois Supreme Court believed the *Apprendi*
issue was moot in *Jackson* because the defendant there did not
reserve any such right to challenge the statute that provided for
his extended sentence, contrary to *Apprendi*. *Id*. ("The petitioner
in *Apprendi* preserved his argument; defendant did not.")

The Supreme Court in *Apprendi*, however, only made passing
reference of the defendant's reservation of rights, and did so only
in passing in the description of the procedural history of the
case. The Court certainly did not make any note that this fact was
important to its reasoning. *See Apprendi*, 530 U.S. at 470.
Moreover, this court has been unable to locate a single federal
case that relies on this explicit reservation of rights as a
significant distinction in deciding when to administer *Apprendi*
protections. Thus, this court is unwilling to embrace the
distinction relied upon in *Jackson* without further controlling
federal authority.

To the contrary, federal authority appears to oppose the
interpretation advanced by the Illinois Supreme Court. The Seventh
Circuit holds that when a fact that increases the maximum
punishment to which a defendant may be subjected is neither

included in the indictment nor admitted or stipulated to by the defendant, a defendant who pleads guilty does not waive his *Apprendi* rights to have those facts proven beyond a reasonable doubt. *See United States v. Bjorkman*, 270 F.3d 482, 492 (7th Cir. 2001)("By pleading guilty [the defendants] did not waive the requirement of *Apprendi* that drug type and quantity be determined by the trier of fact beyond a reasonable doubt (to the extent they affect the statutory maximum), for sentencing came after the plea."). Other circuits agree with this stance. *See United States v. Rebmann*, 226 F.3d 521, 524 (6th Cir. 2000)(finding that although a defendant's guilty plea waived her right to a jury trial, it "did not waive the right to have a court decide any remaining elements of the offense beyond a reasonable doubt, as opposed to making those determinations by a mere preponderance of the evidence"); *United States v. Doe*, 297 F.3d 76, 88-89, 91 (2d Cir. 2002) (finding that a guilty plea alone cannot be construed to convey an admission of drug quantity or a waiver of the defendant's right to beyond a reasonable doubt proof as to drug quantity, even where the defendant acknowledged the possibility of an extended sentence during the plea allocution). The Illinois appellate court's finding that the petitioner waived his *Apprendi* claims is therefore contrary to and involves an unreasonable application of federal law.

## B. Plain or Harmless Error Analysis

The inquiry is not over, however. In a claim under 28 U.S.C. § 2254, even where the defendant shows that his custody is in error due to a violation the Constitution, there must still be a showing of plain error or harmless error, depending on the procedural posture of the case. Where a defendant has raised the error at trial (and the State in fact committed error), the proper standard of review is for harmless error, and the State bears the burden of showing that the error was harmless. *See Aleman v. Sternes*, 320 F.3d 687, 690 (7th Cir. 2003). Specifically, the State must show beyond a reasonable doubt that the error complained of did not have a "substantial and injurious effect or influence" on the challenged outcome. *Chapman v. California,* 386 U.S. 18, 24 (1967); *see also Delaware v. Van Arsdall*, 475 U.S. 673, 681 (1986)("An otherwise valid conviction should not be set aside if the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt."). Where a defendant failed to raise an argument at trial - which appears to be the case here - the proper standard of review is for plain error, and the defendant bears the burden of showing that such error affects substantial rights and seriously affects the fairness, integrity or public reputation of the judicial proceedings. *See United States v. Cotton*, 535 U.S. 625 (2002). Under either standard of review, the Court is convinced there is no error that had a substantial

effect on the outcome here or otherwise affected substantial rights. *Id.*

The State first argues that any *Apprendi* error found by this court is harmless on the grounds that the Illinois Supreme Court's decision in *People v. Ford* would have produced the same result as the appellate court's reconsideration in light of *Jackson*. 761 N.E.2d 735, 738-39 (Ill. 2001)(finding that a defendant who faced the death penalty as possible punishment cannot claim *Apprendi* error since any sentence ultimately imposed is less than or equal to the death penalty). The defendant in *Ford* faced a maximum sentence of death under 720 ILCS 5/9-1(b)(6)(West 1998), which was triggered because the defendant committed first degree murder during the course of another felony. *Ford*, 761 N.E.2d at 737. Taking these crimes together, the trial court in *Ford* could have imposed a death sentence, but declined to do so. *Id.* Instead, the defendant in *Ford* was sentenced to an extended term sentence of 100 years for first degree murder under 730 ILCS 5/5-5-3.2(b)(2), 5-8-2(a)(1)(West 1998) upon a finding that the crime was exceptionally brutal or heinous and indicative of wanton cruelty. *Id.* Although this determination was made under a preponderance of the evidence standard, *id.*, the Illinois Supreme Court declared the extended sentence not in conflict with *Apprendi* because the maximum sentence faced by the defendant, death, was dictated by facts proven and found by the trial court beyond a reasonable doubt. *Id.* at 739

("We therefore hold that, as in this case, when a defendant is found eligible for the death penalty by proof beyond a reasonable doubt, the imposition of an extended-term prison sentence under sections 5-5-3.2(b)(2) and 5-8-2(a)(1) of the Code complies with the rule announced in *Apprendi*."). The State in this case therefore urges that the rule announced in *Ford* renders any *Apprendi* error harmless with respect to petitioner White since he also faced the death penalty.

However, returning to *Apprendi*, the defendant there faced a maximum possible sentence of 20 years in the absence of any sentence enhancement. Such a sentence could have resulted had the maximum sentence been imposed on the two second-degree counts and had these sentences been ordered to run consecutively. *Apprendi*, 530 U.S. at 470. Instead, the defendant in *Apprendi* received an extended sentence of 12 years for one of the second-degree counts (the possession of a firearm for an unlawful purpose), and shorter concurrent sentences on the other counts. *Id*. at 471. Thus, the trial judge in *Apprendi* was statutorily authorized to impose a sentence in excess of the sentence actually imposed. The U.S. Supreme Court in *Apprendi* explicitly recognized this fact, *id*. at 474, but nonetheless found error because the sentence imposed on a particular count exceeded the statutory maximum *for that count*, and this increase was based on factual findings not made using a "beyond a reasonable doubt" standard. *Id*. at 491.

Upon a close comparison of *Ford* and *Apprendi*, this Court can find no difference between the two underlying factual scenarios significant to the issue at hand. When their crimes are viewed cumulatively, both defendants were subject to higher potential sentences than the sentences they ultimately received. At the discretion of the trial courts, both defendants received lesser sentences than these aggregate maximums. But most importantly, both defendants received a higher sentence on at least one count than was statutorily authorized without an additional factual finding by the trial judge. In the case of *Apprendi*, this finding was that the defendant acted with racial bias. In *Ford*, the crime was determined to be exceptionally brutal or heinous. In neither case, however, were these findings made beyond a reasonable doubt, which is precisely the error identified by the Supreme Court in *Apprendi*. This court therefore declines to rely on *Ford* as a reason to find the waiver error harmless.

Although neither party has made strong arguments on the harmless error issue, the Court cannot overlook the fact that *Apprendi* jurisprudence has evolved in both the federal and Illinois courts since the Illinois Appellate court first determined White's original *Apprendi* claims. For example, it is abundantly clear that both the Illinois and federal courts have determined that *Apprendi* is not implicated in consecutive sentencing claims. *State v. Wagener*, 752 N.E.2d 430, 441 (Ill. 2001); *United States v. Knox*,

287 F.3d 667, 669 (7th Cir. 2002); *United States v. Noble*, 299 F.3d 907, 909 (7th Cir. 2002). Thus, we would not expect the Illinois appellate court to resolve the consecutive sentencing issue the same way today as it did in its opinion No. 1-99-0441 dated March 23, 2001. For this reason, there is scant need to remand this issue to the Illinois courts, and White's habeas corpus petition is therefore denied with respect to his consecutive sentencing claims.

With regard to White's claim regarding his extended sentence for first degree murder, there is ample authority in Illinois to find harmless error with regard to the judge's determination of "exceptionally brutal or heinous" made under a preponderance of the evidence standard. *See, e.g., People v. Crespo*, 788 N.E.2d 1117, 1123-25 (Ill. 2001) *supplemental opinion on denial of reh'g* (2003); *People v. Gholston*, 772 N.E.2d 880, 887-88 (Ill. App. Ct. 2002), *appeal denied by* 803 N.E. 2d 489 (Ill. 2003); *People v. Colin*, 799 N.E.2d 451 (Ill. App. Ct. 2003). For example, in *Crespo*, the Illinois Supreme Court considered a 75-year extended sentence of a defendant who had been charged and convicted of first degree murder for stabbing a victim approximately 24 times. *See Crespo*, 788 N.E.2d at 1123-25. In *Crespo*, the defendant murdered his victim by stabbing her repeatedly with an eight-inch-long knife, using "such force that after his assault the knife blade was bent at a 90-degree angle." *Id.* at 1124. After trial and conviction, the

defendant argued that the imposition of an extended term sentence was an *Apprendi* violation. The *Crespo* court held that the nature of the defendant's crime constituted "overwhelming evidence that the crime was brutal and heinous," and decided that there was no plain error because defendant could not show that any error was prejudicial. *See id.* at 1124-25. In other words, the *Crespo* court determined that no reasonable jury would have failed to find that the defendant's crimes were exceptionally brutal and heinous. *See id.*

In *Gholston*, the appellate court concluded that under the facts of the case, which involved a gang rape and aggravated battery, it would be the vacatur of petitioner's sentence, if anything, that would affect the "fairness, integrity or public reputation of the judicial proceedings." *Gholston*, 772 N.E. 2d at 888. Noting the brutality of the crime at issue in *Gholston,* the court stated:

> [I]t is contrary to human experience and reason that the conduct involved in this case should be placed into the technical reservoir of requiring a new sentencing hearing solely for the purpose of attaching a label of "brutal and heinous" to the conclusion reached earlier by the fact finder. Surely these facts would be recognized by any rational and reasonable person as requiring an enhanced sentence.

*Id.* at 887.

Similarly, the facts of this case undeniably show an exceptionally brutal and heinous crime. Indeed, the trial judge

- 23 -

presiding over White's sentencing stated that the murder at issue was one of the most brutal and heinous crimes that he had heard in his experience on the bench. The undisputed testimony shows that after plunging (and breaking) a knife deep into the back of Valerie Drain, White then stabbed and slashed Cole's throat repeatedly, with significant brutality to sever the jugular vein and carotid artery. In light of this record, this Court is certain that had the trial court been asked to find that White's crime was brutal and heinous using a reasonable doubt standard, it would not have hesitated to find so. Accordingly, White cannot show that he was prejudiced in any fashion by the *Apprendi* error, nor can there be any showing that any error seriously affected the fairness, integrity or public reputation of the judicial proceedings.

### III. CONCLUSION

For the reasons stated herein, the Petition for Writ of Habeas Corpus is **DENIED**.

**IT IS SO ORDERED.**

Harry D. Leinenweber, Judge
United States District Court

Date: _April 27, 2004_